UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| DEVIN BARRIOS ET AL. | CIVIL ACTION |
|---|---|
| VERSUS | NO: 17-585 |
| CENTAUR, LLC ET AL. | SECTION: "H"(1) |

### ORDER AND REASONS

Before the Court are Defendant Centaur LLC's Motion for Summary Judgment (Doc. 72); Defendant River Ventures, LLC's Partial Motion for Summary Judgment (Doc. 75); and Centaur LLC's Motion for Summary Judgment on River Venture's Cross-Claim (Doc. 85). For the following reasons, Centaur's Motion for Summary Judgment is DENIED; River Venture's Motion for Partial Summary Judgment is GRANTED; and Centaur's Motion for Summary Judgment on River Venture's Cross-Claim is GRANTED.

### BACKGROUND

Plaintiff Devin Barrios alleges that he was injured while working for Defendant Centaur, LLC ("Centaur") as a Jones Act seaman. Barrios was

1

hired by Centaur, a marine construction company, to work on a construction project to build a concrete containment wall around the edge of a dock facility owned by United Bulk Terminals Davant, LLC ("UBT"). Centaur leased a barge to house its equipment during the project. UBT contracted with River Ventures, LLC ("River Ventures") to provide a crew boat to transport Centaur's employees to and from the project. Plaintiff alleges that he was injured while transferring a portable generator from the crew boat to the barge when the crew boat separated from the barge and he fell into the river, followed by the 100lb generator. Plaintiff brought claims under the general maritime law and Jones Act against both Centaur and River Ventures. River Ventures then filed a cross-claim against Centaur seeking indemnity and insurance pursuant to a Master Service Agreement ("MSA") entered into between UBT and Centaur regarding all construction projects performed by Centaur for UBT.

Defendants Centaur and River Ventures have filed cross-motions for summary judgment regarding Plaintiff's seaman status. Centaur, Plaintiff's employer, argues that Plaintiff is not a seaman and therefore his only remedy against it is for compensation under the LHWCA. River Ventures argues the barge at issue is a vessel in navigation, but that material issues of fact exist as to Plaintiff's seaman status. In addition, Centaur moves for summary judgment on River Venture's cross-claim, arguing that the Louisiana Construction Anti-Indemnity Statute applies to the MSA to prohibit the indemnity and additional insured provisions therein. This Court will consider each Motion in turn.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[3] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[4] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[5] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[6] "We do not . . . in the absence

---

[1] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[3] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).
[4] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[5] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[6] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

of any proof, assume that the nonmoving party could or would prove the necessary facts."[7] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[8]

## LAW AND ANALYSIS

The summary judgment motions before the Court dispute two issues: (1) Plaintiff's seaman status, and (2) River Venture's entitlement to indemnity and insurance pursuant to the MSA between UBT and Centaur. This Court will consider these issues in turn.

### I. Seaman Status

"The Jones Act provides a cause of action in negligence for 'any seaman' injured 'in the course of his employment.'"[9] The Jones Act provides heightened legal protections to seamen because of their exposure to the inherent dangers of the high seas and was intended to provide remedial protections to sea-based maritime workers.[10] The Act, however, does not provide a definition of a "seaman."[11] Instead, the Supreme Court has promulgated two requirements for an employee to achieve seaman status.[12] First, "an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission."[13] Second, "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both

---

[7] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[8] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[9] Chandris, Inc. v. Latsis, 515 U.S. 347, 354 (1995) (quoting 46 U.S.C. § 688(a)).
[10] *Id.*
[11] *Id.* at 355.
[12] *Id.* at 368.
[13] *Id.* (internal quotations omitted).

4

its duration and its nature."[14] As a general rule of thumb, "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act."[15]

These motions present two main issues as to Plaintiff's seaman status: (1) whether the barge was a "vessel in navigation" and (2) how much time Barrios spent working aboard the vessel.

**A. Vessel in Navigation**

Both Centaur and River Ventures have moved for summary judgment regarding whether the barge was a vessel in navigation. "The term vessel has generally been defined broadly and, in its traditional sense, refers to structures designed or utilized for transportation of passengers, cargo or equipment from place to place across navigable waters."[16] "The Supreme Court has specified that the relevant inquiry in determining vessel status is 'whether the watercraft's use as a means of transportation on water is a practical possibility or merely a theoretical one.'"[17] "[A] watercraft is not practically capable of maritime transportation 'unless a reasonable observer, looking to the [watercraft's] physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water.'"[18]

The evidence shows that the barge was used to hold equipment and supplies needed for the construction job on the dock, such as pallets of concrete and a cherry picker. Although it was not capable of self-propulsion, it moved

---

[14] *Id.*
[15] *Id.* at 371.
[16] Bernard v. Binnings Const. Co., 741 F.2d 824, 828–29 (5th Cir. 1984)
[17] Gautreaux v. Trinity Trading Grp., Ltd., No. 12-2851, 2014 WL 1414576, at *1 (E.D. La. Apr. 11, 2014) (quoting Stewart v. Dutra Construction Co., 543 U.S. 481, 497 (2005)).
[18] *Id.* (quoting Lozman v. City of Riviera Beach, Fla., 133 S.Ct. 735, 745 (2013)).

approximately every other day by tug boat or winch. The barge moved up and down the dock by winch to assist with the ongoing project. It also moved by tug boat from the dock to land to retrieve additional supplies for the project.

Centaur argues that the facts show that the barge was a work platform and not a vessel in navigation. "[T]he Fifth Circuit has repeatedly held that barges are not vessels when they are permanently attached to land, and when any transportation function is incidental to their primary purpose as a non-vessel work platform."[19] Here, there is no evidence that the barge was permanently attached to land, and although it lacked a means of self-propulsion, it did in fact move frequently. It cannot be said that this movement was merely incidental because it was necessary to provide supplies and equipment to the dock construction project. The movement of the barge at issue here was not simply theoretical, but it was actually used for the transportation of equipment and supplies over water.[20] Accordingly, this Court holds that the barge was a vessel in navigation.[21]

**B. Time Working on Vessel**

In determining Plaintiff's seaman status, the Court must next consider the amount of time Plaintiff spent working aboard the barge. Centaur argues that Barrios is not a seaman because he spent most of his time working on the dock, not the barge, and the only evidence to the contrary is Barrios's own

---

[19] Young v. T.T. Barge Servs. Mile 237, LLC, 290 F. Supp. 3d 562, 567 (E.D. La. 2017).
[20] See *Gautreaux*, 2014 WL 1414576, at *1; Michel v. Total Transp., Inc., 957 F.2d 186, 190 (5th Cir. 1992).
[21] Centaur makes much ado about the Plaintiff's lack of involvement in the moving of the barge. This Court can find no case law indicating that such a fact has any bearing on the barge's vessel status. The test requires the Court to consider whether the barge moves, not who is involved in its movement.

testimony. River Ventures and Barrios argue that there is a material issue of fact regarding how much time Barrios spent on the vessel and summary judgment is therefore inappropriate.

Centaur is correct that while Barrios testified that he spent 80% of his time on the vessel, at least five other Centaur and dock employees testified that the number was closer to 20%.[22] However, these estimations may conflict with some testimony regarding what work Barrios actually performed aboard the barge. Barrios testified that he welded, grinded, diagramed and moved concrete on the barge. He also testified that the barge was used to "stand on to build—to mount the forms to the dock that you pour the concrete in."[23] In addition, there is testimony from at least one other dock employee that he witnessed the Centaur crew mixing concrete, putting template and rebar in, and pouring concrete from the barge.[24] These facts indicate that substantially more work occurred aboard the vessel than the 20% attested to by some of the Centaur and dock employees, creating a material issue of fact.

Indeed, "[t]he seaman inquiry is a mixed question of law and fact, and it is often inappropriate to take the question from the jury."[25] "[S]ummary judgment on seaman status is proper where the only rational inference to be

---

[22] William Vernor, a dock employee, estimated 20% to 30% of work time was spent on the barge, including break time and lunch time. Craig Rink, Centaur foreman, testified 15% to 20%. Brody Ledet, Plaintiff's direct supervisor, testified 20%. Dylan Ledet, a Centaur laborer, testified 20%, and Andrew Breland, the dock project manager, testified 10% to 15%. The parties dispute the admissibility of Brandon Lavergne's testimony, but this issue need not be reached here.

[23] Doc. 74-2, p. 9.

[24] Robert Rodriguez Deposition, Doc. 74-10.

[25] Harbor Tug and Barge Co. v. Papai, 520 U.S. 548, 554 (1997) (internal citations omitted).

drawn from the evidence is that the worker is not a seaman."[26] Here, there is sufficient conflicting evidence that a jury might draw more than one inference regarding the amount of time that Barrios spent working aboard the barge, and ultimately his seaman status. Accordingly, summary judgment on seaman status is denied.

## II. <u>Contractual Indemnity</u>

In its cross-claim against Centaur, River Ventures seeks indemnity and insurance pursuant to the MSA between UBT and Centaur. Centaur has moved for summary judgment arguing that the Louisiana Construction Anti-Indemnity Statute applies to the MSA to prohibit the indemnity and additional insured provisions therein. River Ventures argues that maritime law, not Louisiana law, applies to the MSA to allow these provisions. The issue then becomes whether the MSA between UBT and Centaur is a maritime contract.

Relying on the Fifth Circuit's decision in *In re Larry Doiron*, the parties appear to agree that a contract is a maritime contract if: (1) the work Centaur was performing for UBT involves maritime commerce, (2) it involved work from a vessel, and (3) the contract provided or the parties expected that a vessel would play a substantial role in completing the contract.[27] Although *Doiron* dealt specifically with contracts in the oil and gas context, it stated that, "If an activity in a non-oil and gas sector involves maritime commerce and work from a vessel, we would expect that this test would be helpful in determining

---

[26] Bernard v. Binnings Const. Co., 741 F.2d 824, 828 (5th Cir. 1984).
[27] 879 F.3d 568 (5th Cir. 2018), This is the approach taken in *Lightering LLC v. Teichman Group, LLC*, No. H-17-3374, 2018 WL 3428561, at *11 (S.D. Tex. July 16, 2018), the only case to have interpreted *Doiron* in a non-oil and gas context so far.

whether a contract is maritime."[28] Accordingly, this Court will consider these factors in turn.

### 1. Maritime Commerce

River Ventures argues that the contract involved maritime commerce because the containment wall was being built on the dock to keep coal and other products being offloaded from barges from falling into the river. Centaur argues that the contract was one for the construction of a concrete lip on a dock and thus does not involve maritime commerce. It argues that the fact that the construction project might have incidentally facilitated maritime commerce is insufficient.

The district court in *Lightering LLC v. Teichman Group* was first to consider the *Doiron* test in a non-oil and gas context.[29] In that case, the contract was one for the wharfage of workboats, the storage of lightering equipment, and the loading and unloading of lightering equipment from workboats.[30] The court held that although lightering is a traditional maritime activity, the contract at issue was merely one that facilitated lightering.[31] The court stated that, "The fact that the Agreement supported [the] lightering operations is informative, but not dispositive. A wide range of non-maritime activities, entirely land based, can 'facilitate' maritime commerce. Instead, the

---

[28] *In re Larry Doiron*, 879 F.3d at 577 n.52. The *Doiron* test asks: "First, is the contract one to provide services to facilitate the drilling or production of oil and gas on navigable waters?" and "Second, if the answer to the above question is 'yes,' does the contract provide or do the parties expect that a vessel will play a substantial role in the completion of the contract?" *Id.*
[29] *Lightering LLC*, 2018 WL 3428561.
[30] *Id.* at *2.
[31] *Id.* at *11

9

court must consider the substance of the Agreement."[32] The court concluded that only the loading and unloading component of the agreement was maritime and that this component was incidental to the non-maritime objective of the agreement.[33]

The Supreme Court instructs that the Court should consider whether the "principal objective" of a contract is maritime commerce.[34] Here, the primary objective of the UBT/Centaur MSA is the construction of a concrete lip on UBT's dock. Like in *Lightering*, this objective merely facilitates the traditional maritime commerce activity of loading and unloading vessels. This Court holds that the land-based construction contract at issue here is non-maritime. It therefore need not consider the other *Doiron* factors.

### 2. Louisiana Construction Anti-Indemnity Statute (LCAIS)

Because the MSA is non-maritime, the parties agree that it is governed by Louisiana law. Centaur argues that the Louisiana Construction Anti-Indemnity Statute (LCAIS) applies to prohibit the indemnity and insurance provisions of the MSA. The LCAIS states that provisions in a construction contract are "null, void, and unenforceable" which (1) purport to indemnify, defend, or hold harmless the indemnitee from any liability resulting from its own negligent or intentional acts, or (2) purport to require an indemnitor to procure liability insurance covering the acts or omissions of the indemnitee.[35]

River Ventures responds that the indemnity and insurance provisions in the MSA fall within a particular exception to the LCAIS's prohibition. The

---

[32] *Id.*
[33] *Id.*
[34] Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 25 (2004).
[35] La. Rev. Stat. § 9:2780.1.

10

exception states that the anti-indemnity rule does not apply when "there is evidence that the indemnitor recovered the cost of the required insurance in the contract price."[36] River Ventures points to testimony from three Centaur employees indicating that it considered overhead costs such as insurance in bidding on the construction job.

This Court finds instructive courts' interpretations of a similar exception to the Louisiana Oilfield Indemnity Act (LOIA). In *Marcel v. Placid Oil Co.*, the Fifth Circuit recognized an exception to LOIA "when the principal pays the entire cost of its own insurance coverage by securing an endorsement naming it as an insured in the contract or policy."[37] "[T]he exception does not apply if any material part of the cost of insuring the indemnitee is borne by the independent contractor procuring the insurance coverage."[38] Here, the fact that Centaur may have considered insurance coverage in calculating its bid does not establish that UBT paid the full amount of the premium or that Centaur did not pay any material part. River Ventures has not carried its burden to show that UBT paid the full amount of its insurance premium and that the LCAIS exception applies. Accordingly, LCAIS applies to prohibit the indemnity and insurance provisions of the MSA.

## CONCLUSION

For the foregoing reasons, Centaur's Motion for Summary Judgment is DENIED; River Venture's Motion for Partial Summary Judgment is

---

[36] *Id.*
[37] Rogers v. Samedan Oil Corp., 308 F.3d 477, 481 (5th Cir. 2002) (discussing Marcel v. Placid Oil Co., 11 F.3d 563 (5th Cir. 1994)).
[38] *Marcel*, 11 F.3d at 570.

11

GRANTED; and Centaur's Motion for Summary Judgment on River Venture's Cross-Claim is GRANTED. River Venture's Cross-Claim against Centaur is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana this 22nd day of October, 2018.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**