# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DEVIN BARRIOS ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 17-585** |
| **CENTAUR, LLC ET AL.** | **SECTION: "H"(1)** |

## ORDER AND REASONS

Before the Court are Cross-Plaintiff River Ventures, LLC, Intervenor-Plaintiff XL Specialty Insurance Company, and Intervenor-Plaintiff Certain Underwriters at Lloyd's London's Motion for Summary Judgment on Coverage (Doc. 243); Intervenor-Defendant Travelers Property Casualty Company of America's Motion for Summary Judgment on Coverage (Doc. 253); Cross-Defendant Centaur LLC's Motion for Summary Judgment on Breach of Contract (Doc. 231); and Cross-Plaintiff River Venture LLC's Motion for Summary Judgment on Breach of Contract (Doc. 241). For the following reasons, Plaintiffs' Motion for Summary Judgment on Coverage is DENIED; Defendant's Motion for Summary Judgment on Coverage is GRANTED; and the Cross-Motions on Breach of Contract are DENIED.

1

## BACKGROUND

Plaintiff Devin Barrios brought suit for an injury he sustained while working for Defendant Centaur, LLC ("Centaur"). Barrios was hired by Centaur, a marine construction company, to work on a construction project to build a concrete containment wall around the edge of a dock facility owned by United Bulk Terminals Davant, LLC ("UBT"). UBT contracted with River Ventures, LLC ("River Ventures") to provide a crew boat to transport Centaur's employees to and from the project.

Plaintiff brought claims under the general maritime law and Jones Act against both Centaur and River Ventures. At trial, River Ventures was found to be solely liable for Barrios's injury.[1] River Ventures filed a cross-claim against Centaur and its insurer, Travelers Property Casualty Company of America ("Travelers"), seeking indemnity and insurance pursuant to a Master Service Agreement ("MSA") entered into between UBT and Centaur regarding all construction projects performed by Centaur for UBT. River Ventures alleges either that it is owed coverage by Travelers or that Centaur breached its obligation in the MSA to obtain the appropriate insurance coverage. On summary judgment, this Court held that the MSA was non-maritime and therefore the Louisiana Construction Anti-Indemnity Statute applied to prohibit the indemnity and insurance provisions of the MSA. The Fifth Circuit reversed and remanded this holding, finding that maritime law applies to the MSA.

---

[1] Doc. 181.

On remand, the parties have filed cross motions for summary judgment on the issues of breach of contract and coverage. River Ventures and its insurers, XL Specialty Insurance Company ("XL") and Certain Underwriters at Lloyd's London's ("Lloyds"), have moved for summary judgment holding that Travelers owes River Ventures coverage. Travelers has moved for summary judgment holding that it does not. Centaur and River Ventures each move for summary judgment on River Venture's breach of contract claim. This Court will consider each issue in turn.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[4] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[5] Summary judgment is

---

[2] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[4] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).
[5] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).

appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[6] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[7] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[8] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[9]

## LAW AND ANALYSIS

### I. Coverage

River Ventures and its insurers, XL and Lloyds (collectively, "Plaintiffs"), move for summary judgment on their claim that Travelers owes defense and indemnity for Barrios's claim under its policy issued to Centaur. Travelers moves for summary judgment dismissing this claim. This Court finds that Travelers does not owe coverage.

Plaintiffs argue that Travelers' Protection & Indemnity ("P&I") policy provides coverage for any additional insured's liability to third parties arising out of "work and/or operations of [Centaur] performed in connection with the

---

[6] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[7] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[8] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[9] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

relevant contract or agreement" with an additional insured, such as UBT, or arising out of "operation or use by [Centaur] of equipment leased or rented" from an additional insured, such as River Ventures.[10] They argue that it therefore provides coverage to River Ventures, or to XL in its own right, for Barrios's injuries which arose out of his work for Centaur at UBT's facility and in connection with the use of a crew boat that had been rented from River Ventures.[11]

Travelers, however, argues that the P&I policy contains a crew/employee exclusion that excludes coverage here. The relevant provision provides that:

> Notwithstanding anything herein contained to the contrary, it is mutually understood and agreed that this Policy does not cover claims in respect to . . . bodily injury [or] personal injury of any crew, seaman or other employee of the Assured regardless of whether they be employees of the Assured or any Additional Assured named in the Policy or endorsed thereto.[12]

The parties agree that Louisiana law governs the interpretation of the policy. Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code."[13] "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[14] "An insurance policy should not be interpreted in an unreasonable or a strained manner so as

---

[10] Doc. 253-4 at 18.
[11] The policy names as additional insureds UBT's contractors and subcontractors and "the insurers of each of the foregoing." *Id.*
[12] *Id.* at 53.
[13] Mayo v. State Farm Mut. Auto. Ins. Co., 869 So. 2d 96, 99 (La. 2004).
[14] LA. CIV. CODE art. 2046.

5

to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion."[15] "The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent."[16]

Travelers argues that the phrase "the Assured" in the crew/employee exclusion refers to Centaur and that the exclusion therefore plainly excludes claims for personal injury to Centaur's employees, such as Barrios. Travelers points out that the policy expressly identifies Centaur as "the Assured."

Plaintiffs, on the other hand, argue that the crew/employee exclusion should be read to exclude claims by employees against their employer. They argue that the phrase "the Assured" refers to the particular insured against whom a claim has been asserted, and that therefore, the exclusion applies to claims against the injured crewmember's employer. Essentially, they argue that "the Assured" means the employer, and the subsequent "regardless of" phrase acknowledges that the exclusion extends to all of the entities insured under the policy if they are sued by their employee.

Travelers is correct that the P&I policy defines Centaur as "the Assured."[17] Therefore, by its plain reading, the policy excludes coverage for personal injury claims brought by any employee of Centaur. The exclusion does not differentiate between which insured the employee brings his claim against,

---

[15] Carrier v. Reliance Ins. Co., 759 So. 2d 37, 43 (La. 2000).
[16] *Mayo*, 869 So. 2d at 99–100.
[17] Doc. 253-4 at 41.

as Plaintiffs suggest. The Court finds this exclusion to be unambiguous, and it need not engage in Plaintiffs' tortured reading thereof. Because Barrios was an employee of Centaur, his personal injury claims are excluded from coverage under the P&I policy Travelers issued to Centaur.[18]

Alternatively, Plaintiffs argue that the indemnity agreement in the MSA takes precedence over the terms of the policy. The MSA requires Centaur to procure primary coverage for River Ventures and to defend and indemnify River Ventures. In so arguing, Plaintiffs cite to the Louisiana Third Circuit's holding in *Carrier v. Louisiana Pigment Co.* and the Louisiana First Circuit's holding in *Dupre v. Transcontinetal Gas Pipeline* for the proposition that the terms of an indemnity agreement control despite policy provisions otherwise.[19] The Court does not read these opinions to stand for this proposition. Rather, the courts in these cases merely looked to the indemnity agreements to determine the priority amongst insurance policies that provided coverage. They did not create coverage where none existed. Further, the indemnity obligation in the MSA is unenforceable as a matter of law pursuant to § 905(b) of the Longshore and Harbor Workers' Compensation Act.[20] Accordingly, the

---

[18] Plaintiffs also argue that they are entitled to coverage under the Bumbershoot policy issued by Travelers to Centaur in connection with its work at UBT. The Bumbershoot policy, however, only applies "in excess of similar coverage provided in a Policy." Doc. 253-6 at 26. In light of the foregoing, no underlying coverage exists.

[19] Carrier v. Louisiana Pigment Co., L.P., 846 So. 2d 803, 810 (La. App. 3 Cir. 2003); Dupre v. Transcon. Gas Pipe Line, LLC, 240 So. 3d 188 (La. App. 1 Cir. 2017).

[20] 33 U.S.C. § 905 ("[T]he employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.").

Court finds that River Ventures and its insurers are not entitled to coverage from Travelers.

## II. Breach of Contract

In light of that ruling, the Court next considers River Venture's claim of breach of contract against Centaur. River Ventures alleges that Centaur's MSA with UBT required it to obtain a P&I policy that included coverage of crew/employee liabilities. River Ventures alleges that Centaur's failure to obtain the required insurance coverage is a breach of the MSA, and Centaur is directly liable for the damages paid to Barrios. Centaur does not dispute that it was required to obtain a P&I policy and that River Ventures is a third-party beneficiary to the MSA. Accordingly, the only issue before the Court is whether the MSA required Centaur to obtain a P&I policy with crew/employee liability coverage.

The MSA sets out in specific detail what insurance Centaur was required to procure in connection with its work for UBT. Specifically, it required Centaur to obtain seven different insurance policies: (1) a worker's compensation/maritime employer liability policy; (2) a comprehensive general liability policy; (3) an automobile policy; (4) a P&I policy; (5) a hull policy; (6) a pollution policy; and (7) an excess umbrella policy. The MSA set forth specific coverages and endorsements that each policy should contain. With respect to the P&I policy, the MSA provide that the following policy should be obtained:

> Primary protection and Indemnity Insurance, including contractual liability, collision/tower's liability and pollution buy-back endorsement subject to the terms and conditions of not less than the P&I SP-23 (Revised 1/56) form of policy or its equivalent

with limit of $1,000,000.00 applicable to any one accident or occurrence.[21]

Centaur argues that its obligations under the MSA should be considered in conjunction with the larger picture of insurance required for the construction work being performed. Centaur points out that the parties agreed to an insurance program where different policies insured different risks, as outlined by the specific requirements for coverage and endorsements in the MSA. The MSA did not expressly require Centaur to include crew or employee coverage in the P&I Policy. It did, however, require it to obtain a worker's compensation policy with a maritime employers liability endorsement ("the MEL policy"), which insured Centaur against liability in the event one of its employees was injured. Centaur points out that the inclusion of crew or employee coverage in the P&I Policy would have been redundant of the coverage provided under the MEL Policy. It argues that it would be illogical for the parties to agree to obtain costly double coverage for the same risk. It further points out that the MSA did not require Centaur to add UBT or its subcontractors as additional insureds on the MEL policy. It argues that this evidences the parties' intention to not transfer employee-related liability to each other. The Court finds these arguments compelling.

On the other hand, River Ventures points to the portion of the MSA that states that Centaur was required to obtain a P&I policy of "not less than the P&I SP-23 (revised 1/56) form of policy or its equivalent."[22] River Ventures argues that, unlike the policy obtained by Centaur, the standard P&I SP-23

---

[21] Doc. 241-4 at 3.
[22] *Id.*

9

form does not include a crew/employee exclusion. River Venture's expert attests to this. In support of its position, River Ventures presents the expert opinion of Jose Guerrero, an expert in the standard terms and conditions of insurance policies, who opines that the crew/employee exclusion is not part of the standard SP-23 (Revised 1/56) policy form. River Ventures argues therefore that the policy obtained by Centaur was "less than" the P&I SP-23, and it breached its obligation under the MSA.

In light of the foregoing, the Court finds the MSA ambiguous as to whether the P&I policy was required to provide crew coverage. The MSA requires "not less than the P&I SP-23 (revised 1/56)," which, in connection with the opinion of River Venture's expert, suggests an intention to include crew coverage under the P&I Policy. On the other hand, the insurance program outlined by the MSA suggests that the parties intended for crew and employee liabilities to be covered by the MEL Policy. Accordingly, this Court finds the MSA ambiguous, and summary judgment is inappropriate.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs River Ventures, Lloyds, and XL's Motion for Summary Judgment on Coverage is DENIED; Defendant Travelers' Motion for Summary Judgment on Coverage is GRANTED; Plaintiff River Venture's Motion for Summary Judgment on Breach of Contract is DENIED; Defendant Centaur's Motion for Summary Judgment on Breach of Contract is DENIED. River Ventures, Lloyds, and XL's claims against Travelers are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana this 30th day of June, 2021.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**