UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**DEVIN BARRIOS ET AL.**                          **CIVIL ACTION**

**VERSUS**                                        **NO: 17-585**

**CENTAUR LLC ET AL.**                            **SECTION: "H"**

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

River Ventures, LLC ("River Ventures") and its insurer, XL Specialty Insurance Company ("XL Specialty"), bring a claim for breach of contract to procure insurance against Centaur, LLC ("Centaur") for amounts they paid to Centaur's injured employee. The parties dispute whether Centaur was obligated to obtain insurance that provided coverage to River Ventures for that liability. This case proceeded to a bench trial on November 7, 2023. Having considered the evidence admitted at trial and the arguments of counsel, this Court makes the following findings of fact and conclusions of law. To the extent a finding of fact constitutes a conclusion of law, and vice versa, the Court adopts it as such.

1

# FINDINGS OF FACT

## A. The Parties

1. At all relevant times, U.S. United Bulk Terminal, LLC ("UBT") operated a facility in Davant, Louisiana.
2. At all relevant times, Centaur, LLC ("Centaur") was a construction company based in Louisiana.
3. On or about July 22, 2015, Centaur executed a Master Service Agreement with UBT for construction services at or near UBT's facility in Davant, Louisiana (the "Centaur–UBT MSA").
4. At all relevant times, River Ventures, LLC ("River Ventures") was a company based in Louisiana that owned and/or operated vessels, including the M/V TROOPER.
5. On or about May 29, 2008, UBT executed a contract with River Ventures for crew boat services at or near UBT's facility in Davant, Louisiana (the "River Ventures–UBT Contract").
6. XL Specialty Insurance Co. issued a Marine Insurance Package Policy and Bumbershoot Policy to River Ventures in connection with the River Ventures–UBT Contract (collectively "the XL Specialty Policy").
7. Travelers Property Casualty Company of America provided a Protection & Indemnity policy ("Centaur P&I Policy") and a Bumbershoot Liability Policy to Centaur in connection with the Centaur–UBT MSA.

## B. Procedural Background

8. On January 25, 2016, Plaintiff, Devin Barrios ("Barrios"), an employee of Centaur, was injured while transferring a piece of equipment from

    River Venture's crew boat, the M/V TROOPER, to a work barge secured to UBT's dock.

9. Following the accident, Devin Barrios and his wife, Megan Barrios, filed suit against River Ventures and Centaur, and their claims proceeded to a bench trial on November 13–19, 2018.

10. At trial, the Court determined that Devin Barrios was a covered worker under the Longshore and Harbor Workers' Compensation Act ("LHWCA") and that River Ventures was negligent and 100% at fault for Devin Barrios's accident. The Court awarded Devin and Megan Barrios a judgment against River Ventures in the amount of $3,308,094, plus prejudgment interest at a rate of 4% per annum on all past damages and post-judgment interest at a rate of 4% per annum on all future damages until paid.

11. On summary judgment, this Court held that the Centaur P&I Policy excluded coverage for personal injury claims brought by an employee of Centaur, such as Barrios. Doc. 276. The Fifth Circuit affirmed this holding. Doc. 289.

12. In accordance with the terms of the XL Specialty Policy, XL Specialty paid the judgment entered against its insured, River Ventures.

13. River Ventures and XL Specialty claim that Centaur breached the Centaur–UBT MSA by failing to obtain a P&I policy that included coverage for crew/employee liabilities.

C. **The Centuar–UBT MSA**

14. Section 5.0 of the Centaur–UBT MSA is the basis of the dispute at issue here. That provision required Centaur to "procure and maintain" several

different insurance policies, insuring different risks and containing specific endorsements and coverages.

15. The Centaur–UBT MSA provides in Section 5.0 that Centaur must obtain the following policies of insurance:
    a. A Workers Compensation/Employers Liability policy that includes Longshore and Harbor Worker's Compensation Act coverage, voluntary compensation coverage, occupational disease coverage, a borrowed servant endorsement naming UBT, and a maritime employers liability endorsement.
    b. A Comprehensive General Liability policy, including "Blanket contractual liability coverage applicable to all liability, indemnity and hold harmless provisions assumed under this Agreement," with a minimum limit of $1,000,000 per occurrence/aggregate.
    c. A primary Protection & Indemnity Policy "including contractual liability, collision/tower's liability and pollution buy-back endorsement subject to the terms and conditions of not less than the P&I SP-23 (Revised 1/56) form of policy or its equivalent with limit of $1,000,000.00 applicable to any one accident or occurrence."
    d. An Excess Umbrella Liability policy: "Excess liability insurance following form with the underlying coverages providing limits of liability of no less than USD $10,000,000.00 per occurrence over coverages and limits provided."

16. Section 5.0 obligates Centaur, as a contractor of UBT, to "with the exception of Workers' Compensation Coverage . . . and the Hull Insurance . . . name each of the UBT Group as additional insureds in each insurance policy as set forth above, but only to the extent of the liabilities assumed by Contractor in this Agreement. Contractor shall ensure that any endorsement naming the UBT Group as additional insureds shall not exclude from coverage the sole negligence of the additional insureds."

4

17. Under Section 6.0 of the Centaur–UBT MSA, Centaur owed defense and indemnity obligations to UBT and the "UBT Group."
18. The Centaur–UBT MSA defines "UBT Group" to include "UBT and UBT's other contractors and subcontractors of any tier and invitees for each of the foregoing, and the respective parents, subsidiaries, affiliates, joint ventures of same, and each of their respective officers, directors, managers, employees, consultants, agents and representative, and any and all vessels owned, chartered, hired, managed or operated by any of the foregoing, and the insurers of each of the foregoing."
19. River Ventures, a subcontractor of UBT, and its insurer, XL Specialty, are included in the UBT Group.

### D. The Centaur P&I Policy

20. The Centaur P&I Policy contains an endorsement entitled "Specific Additional Insured," which names the following as additional insureds under the P&I policy:

    United Bulk Terminals Davant, LLC (UBT) and UBT's other contractors and subcontractors of any tier and invitees for each of the foregoing, and the respective parents, subsidiaries, affiliates, joint ventures or same, and each of their respective officers, directors, managers, employees, consultants, agents and representatives, and any and all vessels owned, chartered, hired, managed or operate by any of the foregoing and the insurers of each of the foregoing.

21. River Ventures is an additional insured to the Centaur P&I Policy.
22. The Centaur P&I Policy provides coverage to the insured and additional insureds against "all such loss and/or damage and/or expense as the Assured shall as owners of the vessel named herein have become liable to pay and shall pay on account of the liabilities, risks, events and/or

5

happenings herein set forth" in the policy, including liability for personal injury.

23. However, the Centaur P&I Policy also contains a "Crew/Employee Exclusion" which excludes coverage for personal injury of any crewmember of Centaur.

24. On summary judgment, this Court held that the Centaur P&I Policy excluded coverage for personal injury claims brought by an employee of Centaur, such as Barrios. Doc. 276. The Fifth Circuit affirmed this holding. Doc. 289.

### E. The Dispute

25. River Ventures and XL Specialty argue that the Centaur–UBT MSA obligated Centaur to obtain a P&I policy that included crew/employee liability coverage. They argue that a standard P&I SP-23 (Revised 1/56) form does not include a "Crew/Employee Exclusion," and Centaur therefore breached the Centaur–UBT MSA's requirement that it obtain a P&I Policy that includes coverage "not less than the P&I SP-23 (Revised 1/56) form of policy or its equivalent." On this point, River Ventures and XL Specialty presented the testimony of Jose Guerrero, an expert in marine claims handling, marine claims management, and coverage issues. Mr. Guerrero testified that the P&I SP-23 form is a standardized form that cannot be modified.

26. Mr. Guerrero, however, has never worked as a marine insurance broker or underwriter.

27. The Court therefore found the testimony of Centaur's expert in marine insurance brokering and the underwriting process, Kenneth Domilise, to

be the most credible on this issue. Mr. Domilise testified that standard forms, such as the P&I SP-23 (Revised 1/56) form, can be modified. He testified that P&I policies are not regulated and can be customized for each insured's operations and needs.

28. Mr. Domilise testified that because the Centaur–UBT MSA required Centaur to obtain a Workers Compensation/Employers Liability policy that included crew coverage, the parties would not have intended for crew coverage to also be included in the Centaur P&I Policy. He testified that it is customary for insurance brokers to work to avoid duplicative coverage for the same risk. He explained that having duplicate coverage for the same risk in multiple policies would trigger "other insurance" clauses, or escape clauses, that exclude coverage for liabilities covered elsewhere. This could result in the insured receiving no coverage.

29. Mr. Domilise testified that Louisiana law requires and heavily regulates workers' compensation insurance. *See* LA. REV. STAT. § 23:1032.1 et. seq. The Centaur–UBT MSA required Centaur to obtain a Workers Compensation/Employers Liability policy that included a "marine employers liability endorsement" ("MEL Endorsement"). Mr. Domilise testified that the MEL Endorsement is a standard form issued by the National Council on Compensation Insurance that cannot be modified. That endorsement expressly excludes coverage for any injury covered by a P&I Policy.

30. If Centaur had retained crew/employee coverage in the P&I Policy, the coverage provided by the MEL Endorsement in the Workers Compensation/Employers Liability policy would have been excluded.

7

31. Similarly, the Centaur P&I Policy includes an escape clause that excludes contribution from the insurer for any claim for which the insured is otherwise protected.
32. Mr. Domilise testified that in his decades as an insurance broker he has never put together an insurance package that included duplicative crew coverage in a both a worker's compensation and a P&I policy.
33. Centaur's potential liability to its crew/employees was covered by the MEL Endorsement to the Workers Compensation/Employers Liability policy.
34. River Ventures and XL Specialty did not offer any evidence of the negotiations between Centaur and UBT in reaching the terms of the Centaur–UBT MSA.

## **CONCLUSIONS OF LAW**

1. This Court has maritime jurisdiction over this dispute.
2. The Court has personal jurisdiction over all parties.
3. The Centaur–UBT MSA is a maritime contract.
4. The Centaur–UBT MSA is governed by maritime law, and to the extent not inconsistent therewith, Louisiana law.
5. XL Specialty and River Ventures bear the burden of proving all of the elements of their breach of contract claim.
6. "The elements of a breach of contract claim under federal maritime law are: (1) a contract between the parties; (2) a breach of that contract; and

(3) damages." *Reel Pipe, LLC v. USA Comserv, Inc.*, 427 F. Supp. 3d 786, 800 (E.D. La. 2019).

### A. Third-Party Beneficiary

7. Neither River Ventures nor XL Specialty was a party to the Centaur–UBT MSA. Therefore, they must establish that they are third-party beneficiaries to the contract, such that they can sue for its breach.

8. "Both Louisiana and federal maritime law recognize the validity of third-party beneficiary status, and . . . '[b]oth sets of law require that the contracting parties manifest an intent to benefit the third party.'" *River Docks, Inc. v. J. Gerber, Inc.*, No. 08-689, 2009 WL 498520, at *5 (E.D. La. Feb. 25, 2009) (quoting *Branch v. Art Catering, Inc.*, 2007 WL 1747023, at *1 (E.D. La. June 15, 2007).

9. The parties agree that River Ventures and XL Specialty fall squarely within the definition of "UBT Group" contained in the Centaur–UBT MSA. The Centaur–UBT MSA requires that Centaur defend and indemnify members of the UBT Group and add them as additional insureds on certain insurance policies.

10. Accordingly, River Ventures and XL Specialty are third-party beneficiaries to the Centaur–UBT MSA and may assert a claim for its breach.

### B. Breach of Contract

11. "When interpreting a maritime contract, the general rules of contract construction and interpretation apply." *Reel Pipe, LLC v. USA Comserv, Inc.*, 427 F. Supp. 3d 786, 800 (E.D. La. 2019) (internal quotation marks omitted).

12. "Each provision of a contract must be read in light of others so as to give each the meaning reflected by the contract as a whole . . . [and] each provision of a contract must be given a meaning which renders it, along with all other provisions, effective rather than meaningless." *Baywater Drilling, LLC v. Sw. Energy Partners, LLC*, No. CV 16-7968, 2017 WL 3658862, at *3 (E.D. La. June 23, 2017), *aff'd sub nom. Baywater Drilling, L.L.C. v. Sw. Energy Partners, L.L.C.*, 721 F. App'x 330 (5th Cir. 2018).

13. "The terms of a maritime contract are given their plain meaning unless the provision is ambiguous. If a contract's 'language as a whole is clear, explicit, and leads to no absurd consequences, and as such it can be given only one reasonable interpretation,' it is not ambiguous." *BP Expl. & Prod. Inc. v. Cashman Equip. Corp.*, 132 F. Supp. 3d 876, 884 (S.D. Tex. 2015), *on reconsideration in part*, No. A. H-13-3046, 2016 WL 1399259 (S.D. Tex. Apr. 8, 2016) (quoting *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 n.6 (5th Cir. 2004)). If the contract is ambiguous, a court may look beyond the written language of the contract to determine the intent of the parties. *Id.*

14. This Court has already found the Centaur–UBT MSA to be ambiguous as to whether it required Centaur to obtain a P&I policy that included crew coverage. Doc. 276.

15. Because the Centaur–UBT MSA expressly required Centaur to obtain a Workers Compensation/Employers Liability policy that included crew coverage and it is the industry custom to avoid duplicative coverage, the

10

parties did not intend to require Centaur to obtain a P&I Policy that also included crew/employee liability coverage.

16. Interpreting the Centaur–UBT MSA to require Centaur to obtain crew coverage in both the Workers Compensation/Employers Liability policy and the P&I Policy would have resulted in duplicative coverage for Centaur and triggered escape clauses in both policies. Accordingly, this interpretation would lead to absurd results.

17. The Centaur–UBT MSA did not obligate Centaur to obtain a P&I Policy with crew/employee coverage.

18. River Ventures and XL Specialty have not carried their burden to show that Centaur owed an obligation under the Centaur–UBT MSA that was breached.

19. Centaur satisfied its obligation under the Centaur–UBT MSA to obtain a P&I Policy and add the UBT Group as additional insureds thereto.

20. Because Mr. Barrios was found to be a covered employee under the LHWCA, Centaur's obligation to indemnify and defend River Ventures is invalid as a matter of law pursuant to 33 U.S.C. § 905(b).

21. River Ventures and XL Specialty's claims for breach of contract are dismissed.

## CONCLUSION

For the foregoing reasons, River Ventures and XL Specialty's claims for breach of contract are **DISMISSED WITH PREJUDICE**. Judgment shall issue in Centaur's favor.

New Orleans, Louisiana this 17th day of November, 2023.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**