**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DEVIN BARRIOS ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 17-585** |
| **CENTAUR, LLC ET AL.** | **SECTION: "H"(1)** |

## ORDER AND REASONS

Before the Court are briefs regarding the issue of Centaur LLC's liability for its breach of contract (Docs. 367–370). For the foregoing reasons, the Court finds that River Ventures, LLC and XL Specialty Insurance Co. cannot succeed on their breach of contract claims against Centaur, LLC.

## BACKGROUND

In 2015, Centaur LLC ("Centaur"), a marine construction company, entered into a Master Service Contract ("MSC") with United Bulk Terminals Davant, LLC ("UBT"), the owner of a dock facility on the Mississippi River. Pursuant to the MSC, Centaur built a concrete containment wall around the edge of the dock facility owned by UBT. Travelers Property Casualty Company of America ("Travelers") provided a Protection & Indemnity policy ("Centaur

P&I Policy") and a Bumbershoot Liability Policy to Centaur in connection with the MSC.

UBT also contracted with River Ventures, LLC ("River Ventures") to provide a crew boat to transport Centaur's employees to and from the project. XL Specialty Insurance Co. ("XL") issued a Marine Insurance Package Policy and Bumbershoot Policy to River Ventures in connection with the River Ventures–UBT Contract. Plaintiff Devin Barrios was injured while transferring a portable generator from River Ventures' crew boat, the M/V TROOPER, to the barge when the crew boat separated from the barge and he fell into the river, followed by the generator. At a bench trial, this Court found that Plaintiff was a longshoreman and that River Ventures was solely at fault for the accident.[1]

River Ventures and XL (collectively "River Ventures") filed a cross-claim against Centaur and its insurer, Travelers, seeking indemnity and insurance as third-party beneficiaries to the MSC between UBT and Centaur. River Ventures alleged either that it was owed coverage by Travelers or that Centaur breached its obligation in the MSC to obtain the appropriate insurance coverage. This Court held that the MSC was non-maritime and therefore the Louisiana Construction Anti-Indemnity Statute applied to void the indemnity and insurance provisions of the MSC.[2] The Fifth Circuit reversed this holding and remanded, finding that maritime law applied to the MSC and therefore the Louisiana Construction Anti-Indemnity Statute did not apply.[3]

---

[1] Doc. 181.
[2] Doc. 99.
[3] Doc. 200.

On remand, the parties filed cross motions for summary judgment on the issues of breach of contract and coverage. River Ventures moved for summary judgment holding that Travelers owed River Ventures coverage. This Court held that the Centaur P&I Policy with Travelers excluded coverage for personal injury claims brought by an employee of Centaur, such as Barrios, because of the crew/employee exclusion.[4] The Fifth Circuit affirmed this holding.[5]

River Ventures next claimed that Centaur breached the MSC by failing to obtain a P&I policy that included coverage for crew/employee liabilities. The Court found the MSC ambiguous on this point, and the parties presented evidence at a bench trial regarding the parties' intent.[6] The Court held that the MSC did not obligate Centaur to obtain a P&I Policy with crew/employee coverage, and therefore River Ventures' claims for breach of contract were dismissed. This finding was reversed on appeal.[7] The Fifth Circuit held that "the language of the MSC is clear, explicit, and leads to no absurd consequences. The MSC therefore unambiguously obligated Centaur to procure a P&I policy that provided coverage for crew/employee personal injuries."[8] The matter was remanded.

Now before the Court is the issue of Centaur's liability for its breach of the MSC. "The elements of a breach-of-contract claim under federal maritime law are (1) a contract between the parties; (2) a breach of that contract; and (3)

---

[4] Doc. 276.
[5] Doc. 289.
[6] Doc. 276.
[7] Doc. 348.
[8] Doc. 361; Barrios v. Centaur, L.L.C., 121 F.4th 515, 519 (5th Cir. 2024).

damages."[9] In light of the Fifth Circuit's ruling, it is undisputed that Centaur breached the MSC by failing to procure P&I insurance with crew coverage.[10] However, on remand, Centaur reasserts its alternative argument that even if it breached the MSC in failing to procure P&I insurance with crew coverage, its breach did not cause damages because River Ventures would not be covered under the Centaur P&I Policy for another reason—because the M/V TROOPER is not a scheduled vessel. River Ventures opposes this argument and also argues that if coverage is excluded, then Centaur has yet again breached the MSC in failing to obtain the proper coverage. The Court considers these arguments now.

## LEGAL STANDARD

"Interpretation of an insurance policy usually involves a legal question that can be resolved properly within the framework of a motion for summary judgment."[11] Although the parties do not style their briefs on this issue as motions for summary judgment, this Court finds that the summary judgment standard is the most appropriate under which to consider their arguments. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

---

[9] Cent. Boat Rentals, Inc. v. Pontchartrain Partners, LLC, 744 F. Supp. 3d 635, 639 (E.D. La. 2024).

[10] The Fifth Circuit also found that Centaur wrongly procured a Bumbershoot policy with a sole fault exclusion in violation of the MSC. *Id.* at 520.

[11] Forrest as Tr. for Jack Thrash Forrest III Tr. v. Ville St. John Owners Ass'n, Inc., 259 So. 3d 1063, 1068 (La. App. 4 Cir. 2018).

is entitled to a judgment as a matter of law."[12] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[13]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[14] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[15] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[16] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[17] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the

---

[12] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).

[13] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[14] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).

[15] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).

[16] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[17] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

necessary facts."[18] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[19]

## LAW AND ANALYSIS

Now before the Court is the issue of whether the Centaur P&I Policy excludes coverage for River Ventures because the M/V TROOPER was not scheduled in the Centaur P&I Policy. And if so, whether Centaur again breached the MSC for failing to schedule the M/V TROOPER in the Centaur P&I Policy. The answers to these questions will resolve the issue of whether Centaur is liable to River Ventures for breach of the MSC.

### A. Coverage under the Centaur P&I Policy

The parties agree that Louisiana law governs the interpretation of the Centaur P&I Policy. Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code."[20] "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[21] "An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion."[22] "The

[18] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[19] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[20] Mayo v. State Farm Mut. Auto. Ins. Co., 869 So. 2d 96, 99 (La. 2004).

[21] LA. CIV. CODE art. 2046.

[22] Carrier v. Reliance Ins. Co., 759 So. 2d 37, 43 (La. 2000).

rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent."[23]

Here, the relevant portion of the Centaur P&I Policy ("the Policy") states that it provides coverage: "against the liabilities of the Assured as hereinafter described, and subject to the terms and conditions hereinafter set forth, in respect of the vessel called the *As per Schedule of Vessels from OMP10114*."[24] In the next line, the Policy states that it provides coverage for "all such loss and/or damage and/or expense as the Assured *shall as owners of the vessel named herein* have become liable to pay and shall pay on account of the liabilities, risks, events and/or happenings herein set forth."[25] Pursuant to the MSC, Centaur was required to, and did, list UBT's contractors, their insurers, and any vessels owned by those contractors as additional insureds under the Policy.

It is undisputed that River Ventures and the M/V TROOPER are Assureds under the Policy, that River Ventures is the owner of the M/V TROOPER, and that the M/V TROOPER is not listed on the schedule of vessels in the Policy. Centaur argues that, by its plain language, the Policy provides coverage only to owners of vessels named in the schedule of vessels in the Policy, and therefore River Ventures as owner of the M/V TROOPER is not covered. River Ventures, on the other hand, argues that because the M/V

[23] *Mayo*, 869 So. 2d at 99–100.
[24] Doc. 352-8 (emphasis added).
[25] *Id.* (emphasis added).

TROOPER is named as an additional insured in the Policy, it is covered pursuant to the "vessel named herein" language. Stated differently, it argues that the M/V TROOPER is "named" in the policy as an additional insured and is therefore covered as a "vessel named herein" despite not being listed on a schedule of vessels.

The Court finds that River Ventures' reading of the Policy ignores its plain language. The Policy expressly states that it provides coverage with respect to vessels on the "Schedule of Vessels." The plain reading of the next line referencing coverage for Assureds "as owners of the vessel named herein" unambiguously references the prior line. The second line describes the coverage provided for the owners of the vessel identified on the first line. "If the insurance policy's language clearly expresses the parties' intent and does not violate a statute or public policy, the policy must be enforced as written."[26] River Ventures has not provided any authority to support a finding that the "vessel named herein" line could logically refer to additional insureds. Because the Centaur P&I Policy expressly intended to cover only the vessels on the schedule identified therein, and the M/V TROOPER is not a scheduled vessel, the Policy does not provide coverage.[27]

**B. Breach of Contract**

Having again found that the Centaur P&I Policy does not provide River Ventures with coverage for the damages awarded to Mr. Barrios, the Court is

[26] Supreme Servs. & Specialty Co. v. Sonny Greer, Inc., 958 So. 2d 634, 638 (La. 2007).

[27] River Ventures also argues that it is entitled to coverage under the Bumbershoot policy issued by Travelers to Centaur in connection with its work at UBT. The Bumbershoot policy, however, only applies "in excess of similar coverage provided in a Policy." Doc. 253-6 at 26. In light of the foregoing, no underlying coverage exists.

again asked to consider whether this failure of coverage is a breach of the MSC. Specifically, River Ventures now argues that Centaur breached the MSC by failing to procure P&I insurance coverage for UBT's contractors and their vessels and insurers. It argues that the MSC required Centaur to procure coverage to the same extent and degree as its contractual indemnity obligation and that it was required to defend and indemnify those same parties with no "as owner" or vessel scheduling requirements. In so arguing, it relies heavily on the Fifth Circuit's characterization of the MSC's insurance and indemnity provisions. In its most recent opinion in this case, the Fifth Circuit described the MSC as imposing "several insurance procurement obligations on Centaur in connection with the dock project, which were designed to mirror the MSC's requirement that Centaur indemnify River Ventures/XL for all claims brought for personal injury of a Centaur employee regardless of cause or fault."[28] River Ventures argues that this statement by the Fifth Circuit dictates that if the Centaur P&I Policy does not provide coverage, then Centaur has breached the MSC for failing to procure coverage for UBT's contractors and their vessels to the same extent as the contractual indemnity obligations.

The MSC, however, does not say as much. The MSC provides only that Centaur obtain a P&I insurance policy with certain provisions and name the "UBT Group as additional insureds."[29] The UBT Group is defined as UBT, its contractors and subcontractors, any and all vessels owned or operated by the contractors, and the insurers thereof. The MSC is specific as to what types of insurance Centaur must procure, the limits for those policies, and the

[28] Doc. 361; Barrios v. Centaur, L.L.C., 121 F.4th 515, 517 (5th Cir. 2024).
[29] Doc. 352-1.

provisions that should or should not be included. River Ventures has not cited to any provision of the MSC requiring Centaur to add the UBT Group vessels to the schedule of vessels. Further, there is nothing in the MSC that requires Centaur to obtain a P&I policy that provides "insurance without limitation and without exceptions to coverage."[30] "A contract is unambiguous when 'its language as a whole is clear, explicit, and leads to no absurd consequences.'"[31] Here, the MSC is unambiguous as to Centaur's insurance procurement obligations. River Ventures cannot create ambiguity by reference to the indemnity provisions of the contract.[32]

Notwithstanding other breaches already addressed in this litigation, it is undisputed that Centaur complied with the requirement of the MSC to add the UBT Group as additional insureds to the Centaur P&I Policy. Accordingly, Centaur did not breach the MSC on this point, and the MSC does not require more.

This Court does not agree that the Fifth Circuit's opinion is contrary to this outcome. Despite River Ventures' characterization otherwise, the Fifth Circuit did not hold that the insurance provisions in the MSC mirror the indemnity obligation. Rather, it stated that they "were designed" to do so.[33] It also counseled, however, that a contract's plain language is controlling, and

---

[30] Landry v. Oceanic Contractors, Inc., 731 F.2d 299, 304 (5th Cir. 1984).

[31] *Barrios*, 121 F.4th at 518 (Chembulk Trading LLC v. Chemex Ltd., 393 F.3d 550, 555 n.6 (5th Cir. 2004)).

[32] The indemnity obligation in the MSC is unenforceable as a matter of law pursuant to § 905(b) of the Longshore and Harbor Workers' Compensation Act. 33 U.S.C. § 905 ("[T]he employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.").

[33] *Barrios*, 121 F.4th at 517.

"[i]t is not the province of the court to relieve a party of a bad bargain, no matter how harsh."[34]

Indeed, in *Texas Eastern Transmission Corp. vs. McMoran Offshor*e, the Fifth Circuit found that a tug operator, Faustug Marine Corp., did not violate its agreement with McMoran Offshore Exploration Co. by failing to provide P&I insurance that covered McMoran's negligence.[35] McMoran argued that Faustug was required to obtain a P&I Policy that covered non-shipowners.[36] As the Fifth Circuit pointed out, however, the agreement specifically stated only that Faustug obtain a P&I policy that *deleted* any language limiting the coverage to an assured who was not a shipowner.[37] The Fifth Circuit found that Faustug complied with this requirement even where the P&I policy it obtained did not have any language that could be deleted that would extend its coverage to non-shipowners and therefore it did not provide coverage to McMoran.[38] This was true even where "[a]ny P&I policy that Faustug might have obtained would not have covered McMoran's negligence, since McMoran's negligence did not arise out of the ownership of a vessel."[39] Significantly, the court further held that although the insurance required under the agreement did not provide coverage, Faustag was required to indemnify McMoran under the indemnification provisions of their agreement.[40]

---

[34] *Id.* at 519 (quoting 11 Williston on Contracts § 31:4 (4th ed.)).

[35] Texas E. Transmission Corp. v. McMoRan Offshore Expl. Co., 877 F.2d 1214, 1227–28 (5th Cir. 1989).

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

Here too, the MSA does not state, as River Ventures would have this Court hold, that Centaur was required to obtain a P&I policy that provided coverage to the same extent as Centaur's indemnification agreement. Rather, it very plainly and specifically set out the kind of P&I policy that Centaur was required to procure and maintain. The fact that the required policy did not ultimately provide coverage is not a breach of the agreement. This is true even where River Ventures would never have been covered under the P&I Policy because none of its vessels were listed on the schedule of vessels. If River Ventures "was not satisfied with the provisions of the policy, it had ample opportunity to negotiate modifications prior to this litigation."[41] Further, as *Texas Eastern* counsels, the indemnification provisions are wholly separate from the insurance provisions of the MSA.[42]

Accordingly, having found that that the Centaur P&I Policy would not have provided coverage to River Ventures as owner of the M/V TROOPER because the M/V TROOPER was not a scheduled vessel and that Centaur had no obligation to add the M/V TROOPER to the schedule of vessels in the Centaur P&I Policy or otherwise obtain a policy that provided coverage, the Court finds that Centaur did not cause any damages to River Ventures for procuring P&I coverage with a crew/employee exclusion in violation of the MSC. "It is fundamental contract law that a party that breaches a contract is liable for the damages *caused* by its failure to satisfy its contractual

[41] *Landry*, 731 F.2d at 304.

[42] *Texas E. Transmission Corp.*, 877 F.2d at 1228.

obligations."[43] River Ventures and XL therefore cannot succeed on their breach of contract claims.

**CONCLUSION**

For the foregoing reasons, River Ventures, LLC and XL Specialty Insurance Co.'s claims for breach of contract are DISMISSED WITH PREJUDICE. Judgment shall issue in Centaur, LLC's favor.

New Orleans, Louisiana this 23rd day of October, 2025.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

[43] *Cent. Boat Rentals, Inc.*, 744 F. Supp. 3d at 639 (emphasis added).